# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON
# CIVIL CASE NO. 09-77-JGW

**DEREK SEAMAN, ET AL.**                                           **PLAINTIFFS**

**V.**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY**          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This action arises from defendant Nationwide Mutual Fire Insurance Company's denial of plaintiffs' claims for insurance coverage after a fire. Pending are cross-motions for summary judgment filed by plaintiff Margie Brammeier [Doc. 109] and defendant. Doc. 112. For the following reasons, plaintiff's motion will be denied and defendant's motion will be granted.[1]

### I. Factual and Procedural History

In January 2008, Brammeier purchased a home in Maysville, Kentucky for approximately $25,000.[2] Over the next few months, she made improvements to the home and accompanying lot, such as landscaping improvements and installation of new siding. Brammeier estimated that she spent $35,000 to $45,000 on improvements. Former plaintiff Derek Seaman (Derek), who is Brammeier's son-in-law, was among the people who worked on improving the property. Derek and his wife, Stefanie, Brammeier's daughter, resided in Florida but Derek allegedly expressed interest in purchasing the house as a residence for himself and Stefanie. Brammeier agreed to sell the property to them for $92,000.00, with a down payment of

---

[1] All parties have consented to disposition by the magistrate judge pursuant to 28 U.S.C. §636(c).

[2] At her deposition, Brammeier testified that she thought she paid $24,900 for the property but might have paid $25,900. Brammeier Dep. (Doc. 122), p. 27.

$2500.00.

Though she did not come to Kentucky to look at the property, Stefanie called a Kentucky-based Nationwide agent to inquire about obtaining homeowners insurance. The agent took Stefanie's application information over the phone but stated that in order to bind the insurance the application would have to be signed and payment remitted. The agent also stated that he would be out of town but would leave all necessary paperwork to be signed. Brammeier did not speak to the agent.

On April 18, 2008, Derek went to the local Nationwide office to sign the application. Brammeier states that she accompanied Derek. Nationwide disputes Brammeier's assertion that she accompanied Derek, relying upon a statement of Derek's in which he gave a rambling, non-responsive answer when directly asked whether Brammeier accompanied him to the Nationwide office.[3]

Brammeier further asserts that she asked the person with whom the agent left the policy, Lindsay, to be included as a named mortgagee on Derek's policy. Lindsay was not an employee of Nationwide; rather, she was an employee of another business which shared office space with the local Nationwide agency. The agent stated at his deposition that Lindsay had no authority to quote insurance or to bind coverage. Indeed, the agent testified that Lindsay was not even

---

[3]Derek's statement contains the following exchange:
Q. When insurance was taken out on this house did you apply for the insurance or did Margie [Brammeier] go or was it you[?]
A. I was there. I you know filled out the paper work and everything like that and all they did was they got out and measured the house or whatever they did and I went in and signed the papers and they said, they gave me a print out, you know what I'm saying, I didn't you know ask them well what's the coverage or this or that, they just gave me a print out and said here you go this is your coverage.
Doc. 112-6, p. 4.

authorized to provide application forms or to obtain information from prospective policyholders. Instead, the agent testified that Lindsay was only authorized to accept premium payments.

On April 21, 2008, a deed of conveyance was signed transferring all property interests in the property from Brammeier to Derek.[4] According to the deed, Brammeier retained a lien on the property until Derek repaid the principal. Brammeier asserts that she showed this deed to Lindsay and specifically asked to be placed on the policy as a mortgagee. The policy that was ultimately issued, however, named only Derek as an insured and did not refer to Brammeier. And Brammeier has not explained how she could have shown a deed dated April 21, 2008 to Lindsay on April 18, 2008.

Late on May 27 or early on May 28, 2008, a fire destroyed the dwelling and its contents. Defendant denied Derek, Stefanie and Brammeier's subsequent claims to recover under the policy.

In May 2009, Derek, Stefanie and Brammeier filed suit against defendant in a Kentucky state court. In July 2009, defendant removed the action to this Court on diversity grounds. Brammeier and defendant filed cross-motions for summary judgment in late 2010. In December 2010, the Court denied Derek and Stefanie's construed motion to voluntarily dismiss their claims without prejudice. Instead, after having previously issued repeated warnings, the Court granted defendant's motion to dismiss with prejudice all claims by Derek and Stefanie due to their persistent refusal to participate in discovery. Thus, Brammeier is the only remaining plaintiff.

---

[4]Stefanie is not named on the deed. In a statement of Brammeier which is attached as an exhibit to her deposition, she states that Stefanie wanted the property transferred solely to Derek so that she (Stefanie) would not have to come from Florida to Kentucky to sign the transfer documents. Doc. 122-9, p.11.

**II.    Analysis**

   **A.  Standard of Review**

Summary judgment is proper only if the facts on file with the court demonstrate not only that no genuine issue of material fact remains to be resolved but also that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party may discharge its burden by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party cannot rest on its pleadings, but must identify specific facts that remain for the finder of fact at trial.  *See id.* at 324.  Although all inferences are drawn in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), the nonmoving party must present significant and probative evidence in support of its complaint.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether a genuine issue of material fact remains for a fact finder at trial.  *Id.* at 249.  The inquiry is whether the evidence presents a "sufficient disagreement to require submission [of the case] to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts.  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).  Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), and to designate specific facts that are in dispute.  *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05.

"For purposes of diversity jurisdiction, a federal court is in effect another court of the forum state, in this case Kentucky, and must therefore apply the substantive law of that state." *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). But since summary judgment is a "procedural device for deciding a case without the necessity of a full-blown trial[,]" a court must analyze a summary judgment motion in a diversity action under the terms of Federal Rule of Civil Procedure 56." *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 459 (6th Cir. 1986).

**B. Insurable Interest**

Defendant argues the policy is void because Derek did not have an insurable interest in the property at the time the policy was created because the deed conveying the property to Derek was dated April 21, 2008–three days after the insurance policy took effect. I agree.

A person has an insurable interest in the subject matter insured when he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction or injury by the happening of the event insured against. *Crabb v. Calvert Fire Ins. Co.*, 255 S.W.2d 990, 991 (Ky. 1953). *See also* Kentucky Revised Statutes (KRS) 304.14-060 (2) (defining "insurable interest" in property as "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment."). Kentucky law requires a person to have an insurable interest in the insured property "both at the time of the making of the contract and at the time of the loss . . . ." *Crabb*, 255 S.W.2d at 991. And an insurance contract "is void from its inception" if "an insurable interest does not exist at the time the contract for insurance was made . . . ." 44 Am.Jur.2d *Insurance* §933 (2011).

The question thus is whether Derek possessed an insurable interest in the property when

5

the insurance policy took effect on April 18, 2008, even though the deed was not executed until April 21, 2008. In Brammeier's October 9, 2008 examination under oath (EUO), she stated that she received the down payment from Derek and Stefanie prior to the April 21 execution of the deed. Doc. 122-7, p. 3-4. But Brammeier does not state during that EUO when she received the down payment from Derek. And Brammeier points to nothing elsewhere in the record to show with specificity when Derek paid the down payment.[5] The parties have not specifically shown, therefore, that Derek had a tangible financial stake in the property at the time the insurance contract took effect. Thus, the Court cannot conclude, based on the record presented to it, that Derek possessed an insurable interest in the property on April 18, 2008--the date the insurance contract took effect.

Having concluded that Derek lacked an insurable interest at the time the policy became effective, the Court must then determine whether defendant correctly asserts that Derek's lack of an insurable interest at the inception of the insurance contract is fatal to Brammeier's claim. Based on Kentucky precedent, the Court agrees with defendant.

Kentucky precedent supports defendant's assertion that Brammeier's claim is entirely derivative of, and dependent upon, Derek's. In *Northfield Ins. Co. v. First Nat. Bank & Trust*, 2003 WL 1225673 (Ky.App. Jan. 10, 2003), Northfield Insurance Companies issued a commercial insurance policy to Paradise, a houseboat manufacturer. Paradise was named as the sole insured. First National Bank & Trust was a secured lender to Paradise and had a security interest in property belonging to Paradise. A fire occurred and Paradise's property was

---

[5]One glaring fact in this case is the absence of documentary proof of any monetary transfer from Derek and/or Stefanie to Brammeier.

destroyed, including the collateral securing the loans of First National. Ultimately, Northfield denied coverage after concluding that someone acting on Paradise's behalf intentionally caused the fire. First National filed suit against Paradise and Northfield. The trial court granted summary judgment to First National.

Among the arguments raised by First National as an appellee in Northfield's appeal was a contention that it was entitled to recover under the policy "because it had an equitable lien on the insurance proceeds by virtue of its agreement with Paradise requiring Paradise to procure and maintain property insurance with coverage for its personal property collateral." *Id.* at \*7. The Kentucky Court of Appeals recognized the general principle that a mortgagee has an equitable lien on the insurance proceeds if the mortgagor had agreed to insure the property for benefit of the mortgagee but had failed to do so, but the court concluded that principle did not mandate relief for First National. Crucially, the court held that "[w]hat First National fails to recognize, however, is that its right to recover is still dependent on the success of Paradise's claim with Northfield, the merits of which have not yet been addressed and are questionable." *Id.*

Applying *Northfield Ins. Co.* to the case at hand, it is clear that Brammeier's right to recover under the policy as a putative mortgagee is wholly dependent upon the claim of the insured, Derek.[6] But, as previously discussed, the record does not show that Derek had an insurable interest in the property when the insurance contract became effective. Moreover, Derek's claims against defendant have been dismissed with prejudice. Because her right to recover on the policy is "dependent on the success of" Derek's erstwhile claims against

---

[6]Brammeier's claims actually are weaker than those of First National in *Northfield Ins. Co.* because Derek was not contractually obligated to provide insurance for Brammeier's benefit.

7

defendant, Brammeier's claims must fail. *Id.*

Nonetheless, Brammeier argues that her claim is independent of Derek's based upon two cases, both of which are readily distinguishable from the case at hand. The first case relied upon by Brammeier is *Estes v. Thurman*, 192 S.W.3d 429 (Ky.App. 2005). In *Estes*, William and Gayle Estes entered into a land sales contract with Virgie Thurman to purchase a residence. The sales contract required the Esteses to maintain insurance on the residence until the principal was paid, although the record showed that Thurman inexplicably procured the insurance. A fire destroyed the residence before the Esteses paid the entire principal. The insurance company paid Thurman's claim and Thurman filed suit against the Esteses, claiming they had defaulted under the contract by not securing insurance for the residence. The Esteses counterclaimed for a portion of the insurance proceeds in excess of the amount they owed Thurman under the contract. The Kentucky Court of Appeals held on appeal that the Esteses were the equitable owners of the property pursuant to the principles involved in land sales contracts and, as such, the Esteses held the risk of loss in the event of a fire. *Id.* at 433. Thus, the court concluded that the Esteses possessed an insurable interest in the property.

*Estes*, however, differs from the case at hand in two main respects. First, Derek did not purchase the property from Brammeier via a land sales contract. Indeed, the record contains only a deed, not a written purchase agreement or contract between Derek and Brammeier. Second, there was no agreement requiring Derek to obtain and maintain insurance on the property. Though the Court does not disagree with the Kentucky Court of Appeals' observation in *Estes* that "it is not necessary that one be named as an insured in an insurance policy in order to be entitled to policy proceeds[,]" *id.* at 432, *Estes* provides no relief for Brammeier as that

8

decision is premised upon the unique rules governing land sales contracts.

The second case relied upon by Brammeier is *Castle Ins. Co. v. Vanover*, 993 S.W.2d 509 (Ky.App. 1999). In *Vanover*, the Vanovers sold a home to the Sumlers. The Sumlers borrowed some of the sales price from a bank and gave the bank a first mortgage on the property; the Sumlers also gave the Vanovers a promissory note secured by a second mortgage on the property. The Sumlers purchased homeowners insurance from Castle Insurance Company, listing Mr. Sumler as insured and the bank as the mortgagee and loss payee. The Vanovers were neither named insureds or loss payees on the policy. After the house was destroyed by a fire, the bank foreclosed and settled with Castle. Castle refused to pay the Vanovers any of the policy proceeds because they were neither named insureds or loss payees. The Vanovers filed suit and, on appeal, the Kentucky Court of Appeals concluded that the Vanovers had an insurable interest in the property because the Sumlers "by virtue of their agreement with the Vanovers, had an obligation to insure" the Sumlers' interest and, moreover, the Vanovers were not listed on the policy through no fault of their own. *Id.* at 510. In summarizing its decision, the court stated that under Kentucky law, "[i]n situations where the mortgagor agrees to insure the property for the benefit of the mortgagee, but fails to do so, an equitable lien is created on the insurance proceeds for the benefit of the mortgagee to the extent of its insurable interest." *Id.* at 512. The case at hand is easily distinguishable, however, as there was no agreement requiring Derek to maintain insurance on the property for the benefit of Brammeier. Thus, *Vanover* does not afford Brammeier relief.

Finally, the Court rejects Brammeier's contention that the existence in the policy of a standard mortgage clause entitles her to relief. A standard mortgage clause "is ordinarily held to

operate as an independent contract between the insurer and the mortgagee . . . ." *Grange Mut. Cas. Co. v. Central Trust Co., N.A.*, 774 S.W.2d 838, 839 (Ky.App. 1989). The standard mortgage clause protects the mortgagee from the acts or negligence of the mortgagor, meaning that "[i]n essence, the mortgagee does not stand or fall with the mortgagor and acquires rights which give it independent and distinct protection. The purpose of the mortgage clause is to protect the mortgagee's interest." *Id.* at 840. Importantly, however, "if the insured has no interest in the property, so that the policy is void as against public policy, his or her mortgagee acquires no rights against the insurer by reason of a loss-payable clause." 4 *Couch on Insurance* § 65.12 (2011). Thus, since Derek did not have an insurable interest in the property at the inception of the insurance contract, the contract is void. No recovery can be had pursuant to a void contract. *See, e.g., Gatewood v. Universal Underwriters Life Ins. Co.*, 2007 WL 2702213, at * 3 (W.D.Ky. Sep. 12, 2007) ("A contract which is void ab initio is of no legal effect and is unenforceable. *See Lykins v. Oaks*, 150 S.W.2d 231, 232 (Ky.1941); *Commonwealth v. Whitworth*, 74 S.W.3d 695, 700 (Ky.2002). Where a contract is found to be void ab initio, there can be no damages as there was no contract. *Carroll Gas & Oil Co. v. Skaggs*, 21 S.W.2d 445, 450-51 (Ky.1929)."). Accordingly, since the insurance contract is void due to Derek's lack of an insurable interest, defendant is entitled to judgment as a matter of law.

The Court's conclusion that the policy is void renders moot the other arguments raised by the parties. Similarly, Brammeier's bad faith and unfair claims settlement practices claims, which the Court had ordered to be bifurcated and stayed pending resolution of the breach of contract claims, must fail concomitantly with the failure of the breach of contract claims. *See, e.g., Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) ("Absent a

contractual obligation, there simply is no bad faith cause of action, either at common law or by statute. In the case at bar, AFI was under no contractual obligation to pay the Davidsons' claims; thus, there exists no statutory or common law basis for a bad faith claim against it."); *Kentucky Nat. Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky.App. 2004) ("we believe it is [a] sound principle that, in absence of a contractual obligation in an insurance policy for coverage, there can be no claim for bad faith.").

### III. Conclusion and Order

For the reasons state herein, **IT IS ORDERED**:

1. Plaintiff Brammeier's motion for summary judgment [Doc. 109] is **denied**; and

2. Defendant's motion for summary judgment [Doc. 112] is **granted**; and

3. A separate judgment will be issued herewith.

This the 9th day of June, 2011.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge